Rockingham
No. 87-208

LEONARD A. VIGEANT AND JANE M. VIGEANT

v.

DONEL REALTY TRUST

April 15, 1988

*Charlton J. Swasey*, of Kingston, by brief and orally, for the plaintiffs.

*Brown & LaPointe*, of Exeter (*Scott W. LaPointe* on the brief and orally), for the defendant.

BATCHELDER, J.  The plaintiffs in this equitable proceeding to quiet title and affirm an easement, Leonard A. and Jane M. Vigeant, are the owners of a six-acre tract of land in Kingston which does not abut any public way. The tract is bounded by land of the defendant, the shore line of Powwow Pond, land owned by the B & M Railroad, and another parcel, the ownership, use, and identity of which are not of significance to this proceeding. The plaintiffs' tract was acquired by them under a deed from the heirs of Linwood C. and Mildred Ordway, dated May 14, 1984. The Ordways acquired ownership by deed of Charles and Doris Hale dated July 29, 1959.

John R. Rowell was predecessor in title of both the plaintiffs' and the defendant's tracts, owning them as one tract until May 8, 1893, when he conveyed out the six-acre tract in question. During the intervening years the two parcels ultimately devolved to the parties to this litigation by a series of conveyances.

The plaintiffs claim entitlement to a right of way by prescription over the land of the defendant for purposes of ingress and egress from and to New Boston Road, a public way. The matter was heard by a Master (*Anthony Cogswell*, Esq.), and a decree in favor of the plaintiffs was approved by the Court (*Gray*, J.) on March 23, 1987. The defendant appealed, claiming lack of factual support for the master's ruling. For the reasons which follow, we reverse and remand.

The law of prescriptive easement is well settled. The claimant has the burden of proving the existence of a prescriptive easement by establishing by the balance of probabilities "twenty years' adverse, continuous, uninterrupted use of the land [claimed] in such a manner as to give notice to the record owner that an adverse claim [is] being made to it." *Page v. Downs*, 115 N.H. 373, 374, 341 A.2d 767, 768 (1975); *Arnold v. Williams*, 121 N.H. 333, 334, 430 A.2d 155, 156 (1981); *Williams v. Babcock*, 116 N.H. 819, 823, 368 A.2d 1168, 1170 (1976); *Ucietowski v. Novak*, 102 N.H. 140, 144, 152 A.2d 614, 618 (1959); *Gowen v. Swain*, 90 N.H. 383, 385–86, 10 A.2d 249, 251 (1939). It is not enough to show that the use was made for the requisite period. "Evidence of continuous and uninterrupted public use of the premises for the statutory period . . . is insufficient alone to establish prescriptive title as a matter of law. The nature of the use must be such as to show the owner knew or ought to have known that the right was being exercised, not in reliance upon his toleration or permission, but without regard to his consent." *Wason v. Nashua*, 85 N.H. 192, 198, 155 A. 681, 685 (1931). Moreover, the claim can not be for a right to cross the owner's property generally, but rather, it must be for a definite, certain and particular line of use. 2 THOMPSON ON REAL PROPERTY § 340, at 199 (1980).

Upon reviewing a master's decision, we must make a determination as to whether a reasonable person could have reached the same conclusion as the master. *Post Road Realty, Inc. v. Zee-Bar, Inc.*, 117 N.H. 136, 139, 370 A.2d 282, 285 (1977). The master below found "by a preponderance of the evidence that a prescriptive easement was open to the public and to the plaintiffs' predecessors in title at least as long ago as 1867." The master commented that there was "ample evidence" that the route was used openly, continuously and adversely, at least until 1968, when the defendant placed gates across the right of way.

The outcome of this case does not depend upon the definition of a prescriptive easement, but whether the record before us supports the master's finding of its existence. The record must at least support a finding of continuous, adverse use of the owner's land for any twenty-year period. We hold that it does not.

The facts are close as to whether the right was exercised continuously for twenty years. The plaintiffs offered no evidence establishing that the right of way was used by their predecessors for twenty years prior to 1968, when the defendant installed the gates. While the master determined that there was "ample evidence" that a prescriptive easement was created, the only evidence supporting a finding of a prescriptive right for any twenty-year period after 1893, when the plaintiffs' tract was originally conveyed, was the testimony of David Bisson, a resident of Newton who grew up near the area in question. Bisson testified on September 18, 1985, the date of the trial, that approximately 37 years ago, when he was between 13 and 15 years old, he and other members of the public traveled across the defendant's property over a logging road to go to the plaintiffs' property, then called "Sandy Point." Bisson's description of the right of way establishes the use as far back as sometime between 1948 and 1950. Since the plaintiffs have shown that the use extended at least as far back as 1948, or a twenty-year span at a point prior to the installation of the gates, the master could have found the required twenty years of continous use.

In addition to establishing the requisite time period, however, the plaintiffs must also prove that the nature of the use was adverse to the defendant's ownership. One cannot determine from the record whether the use was adverse or permissive, and this being the case, the plaintiffs have failed to establish adverse use, which is critical to their claim. The plaintiffs offered only Bisson's testimony, and he stated that he had not known whether he had permission to cross the defendant's property, or whether the previous owner knew or should have known that the use was adverse. The defendant, on the other hand, introduced testimony to show that the Ordways, the plaintiff's immediate predecessors in title, did not use the right of way in an adverse manner. Testimony was introduced to show that after 1959, when the Ordways bought the property, they rowed a boat across the pond to gain access to their property; in 1967, after the defendant paved the road, the defendant permitted the Ordways to use the road; and in 1968, the defendant gave the Ordways a set of keys to the locked

gates so that the Ordways could continue to use the road. The plaintiffs did not rebut the evidence of permissive use before 1968.

The record also does not indicate whether the line of use created by the paved road was, in 1967, the same as the path used in 1948. The plaintiffs' witness, Bisson, stated in his testimony that he could not identify positively that the paved road was the same line of use as the logging road. Even the master concluded that "it is now impossible to locate precisely the exact location of said public right of access through what is now the property of the [d]efendants . . . ."

■ Because the facts before us show neither an adverse use for the requisite period of twenty years nor the precise location of the use, we hold that a reasonable person could not find that the plaintiffs had proved by a balance of the probabilities the existence of an easement by prescription, and that the master therefore erred in finding such an easement.

■■ The master did not rule on the plaintiffs' alternative claim that they or their predecessors in title acquired an easement by necessity. An "easement by necessity" arises from the implied intent of the parties. *Bradley v. Patterson*, 121 N.H. 802, 803, 435 A.2d 129, 131 (1981). "Necessity alone is insufficient to create an easement." *Id.; Plastic Laminated Prods., Inc. v. Seppala*, 115 N.H. 22, 23, 332 A.2d 185, 186 (1975). We therefore reverse and remand for a determination on whether the plaintiffs acquired an easement by necessity.

*Reversed and remanded.*

All concurred.